| | |
|---|---|
| Case No.: **ED CV 18-2289-MWF (PLA)** | Date: **January 17, 2019** |

Title:   Jose Rodriguez-Ramirez v. Jefferson R. Sessions, et al.

PRESENT: THE HONORABLE    PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

| Christianna Howard | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

ATTORNEYS PRESENT FOR PLAINTIFF:            ATTORNEYS PRESENT FOR DEFENDANT(S):
                NONE                                                            NONE

**PROCEEDINGS: (IN CHAMBERS) ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

On October 26, 2018, Jose Rodriguez-Ramirez ("plaintiff"), a federal prisoner, filed in this Court a *pro se* civil rights Complaint pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). ("Complaint" or "Compl."). (ECF No. 1). He was subsequently granted leave to proceed *in forma pauperis*. (ECF No. 6). Plaintiff, a prisoner housed at the Federal Correctional Institute I - Victorville ("FCI-I"), in Adelanto, California, names a dozen individual defendants. (Compl. at 2-6). The first "group" of three defendants includes the Attorney General of the United States, the Director of the Board of Prisons, and the Director of the Designation Sentence Computation Center ("Director Defendants"), all in their individual capacities; the second "group" of two defendants includes Dennis Wong, the Western Regional Counsel responsible for investigating and deciding inmate grievances, and Elizer [sic] Ben-Shmuel, the BOP Chief Litigation Attorney ("Grievance Defendants"), both in their individual and official capacities; the third "group" of six defendants is comprised of the Acting Complex Warden; the Acting Deputy Captain for the FCI Complex; the Warden for the FCI Complex; the FCI-I Complex Captain; and two Wardens for FCI-I ("FCI-I Defendants"), all sued in their individual capacities, with the Acting Complex Warden also sued in his official capacity; and the fourth "group" consists of Dr. Villalon, the FCI-I doctor; as well as unnamed Doe health care providers at FCI-I ("Medical Defendants"), all in their individual and official capacities. (Id.).

The Complaint raises allegations of cruel and unusual punishment under the Eighth Amendment based on failure to protect and deliberate indifference to medical needs; and deprivation of plaintiff's First Amendment and due process rights with regard to inmate grievances. Plaintiff generally alleges that his living conditions are unsafe because the environmental conditions at FCI-I are so bad as to violate his Eighth Amendment rights, i.e., FCI-I "is built upon a toxic-wast[e]-dump Superfund cleanup site," and that "[l]urking in the soil and water supply are 33 hazardous chemicals." (Compl. at 5, 7). Plaintiff states that prior to his arrival at FCI-I, he had been told by a licensed ophthalmologist that he "had only 5 percent vision in his left eye . . . that . . . would require two surgeries . . . and . . . seventy percent vision in his right eye, which could be cured with a single surgery." (Compl. at 7). Almost immediately after he arrived at FCI-I on June 11, 2017, however, he contends that he began to experience additional "vision/eye problems." (Compl. at 5-7). Although he has been examined by an "out of institution eye doctor" since being incarcerated at FCI-I, plaintiff contends that that doctor has failed to provide proper care for his serious vision needs, and has told plaintiff that there is no technology to help his

vision problems; the doctor did not go forward with the surgeries previously recommended by the original ophthalmologist. (Compl. at 8). Plaintiff asserts that because of the delay in providing plaintiff with the health care he needs, he "has lost virtually all vision in his left eye and can see only a small amount of light from his left eye, and has suffered ongoing, excruciating pain in both eyes." (Id.). He further states that this is a "direct and proximate result" of his exposure to the toxic chemicals "in the FCC Victorville environment." (Compl. at 9).

Plaintiff asserts the following four claims:

(1) Count 1 asserts that the Director Defendants have violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, by virtue of their failure to protect, and based on their "designating [him] to serve his entire sentence of imprisonment exposed to the toxic chemicals" at FCI-I, "24 hours per day seven days per week." (Compl. at 9);

(2) Count 2 asserts that the FCI-I Defendants have violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, by virtue of their failure to protect him from the environmental contamination and to provide him "with adequate quarters, care and subsistence for [his] safekeeping." (Compl. at 10-11);

(3) Count 3 asserts that the Medical Defendants have violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, based on their "deliberate indifference to [his] serious medical needs," resulting in "a lifetime of total, incurable blindness, pain and suffering caused by their indifference to the effects of Plaintiff's []deliberate and intentional exposure to the toxic environment they have forced upon Plaintiff, and their failure to adequately treat Plaintiff's advancing blindness and increasing pain and suffering." (Compl. at 10); and

(4) Count 4 asserts that the Grievance Defendants use improper "tactics" when considering inmate grievances, which "directly infringe[] the inmate's right to petition [under the First Amendment], and deprive[] the inmate of Due Process guaranteed by the Fifth Amendment." (Compl. at 11).

In accordance with the mandate of the Prison Litigation Reform Act of 1995 ("PLRA"), the Court has screened the Complaint prior to ordering service for the purpose of determining whether the action is frivolous or malicious; or fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). The Court's screening of the pleading under the foregoing statute is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (in determining whether a complaint should be dismissed under the PLRA, courts apply the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure). Further, with respect to a plaintiff's pleading burden, the Supreme Court has held that: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (internal citation omitted)).

The Court is mindful that, because plaintiff is appearing *pro se*, the Court must construe the allegations of the Complaint liberally and must afford plaintiff the benefit of any doubt. See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, it is particularly important in a civil rights case filed by a *pro se* inmate to attempt to ascertain plaintiff's claims to protect his access to the courts. See Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) (the rule that courts liberally construe filings by *pro se* litigants, especially in civil rights cases filed by inmates, "relieves *pro se* litigants from the strict application of procedural rules"); Pouncil v. Tilton, 704 F.3d 568, 575-76 (9th Cir. 2012) (the rule of liberal construction "protects the rights of *pro se* litigants to self-representation and meaningful access to the courts"). In addition, the Court may not dismiss a claim because a *pro se* plaintiff has failed to set forth a complete legal theory supporting the claim alleged. See Johnson v. City of Shelby, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (*per curiam*) (noting that the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"). That said, the Supreme Court has made it clear that the Court has "no obligation to act as counsel or paralegal to *pro se* litigants." Pliler v. Ford, 542 U.S. 225, 231, 124 S. Ct. 2441, 159 L. Ed. 2d 338 (2004). Further, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004).

After careful review of the Complaint under the foregoing standards, the Court finds that, as discussed in more detail below, the Complaint is deficient and must be dismissed with leave to amend. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a *pro se* litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

### **Counts 1 and 2**

A Bivens claim is an "implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." Vega v. United States, 881 F.3d 1146, 1152 (9th Cir. 2018); see also Ziglar v. Abbasi, 137 S. Ct. 1843, 1854, 198 L. Ed. 2d 290 (2017) (noting Bivens provides implied action for money damages against individual federal officials for certain constitutional violations similar to 42 U.S.C. § 1983) (citations omitted). The Supreme Court has increasingly restricted Bivens claims, however, such that they are now available only in very limited contexts. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 67-68, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001). In Corr. Servs. Corp., the Supreme Court noted that "[s]ince Carlson [v. Green, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980)] we have consistently refused to extend Bivens liability to any new context or new category of defendants." Id. The Court described the three recognized contexts for Bivens claims at that time: (1) Fourth Amendment claim for police search and seizure in Bivens, 403 U.S. 388; (2) Fifth Amendment claim for gender discrimination where the plaintiff was explicitly excluded from alternative remedies in Davis v. Passman, 442 U.S. 228 (1978); and (3) Eighth Amendment claim for deliberate indifference toward a prisoner's medical needs in Green.

The Supreme Court has recently "made clear that expanding the Bivens remedy is now a disfavored judicial activity." Ziglar, 137 S. Ct. at 1857 (internal quotation marks omitted); see Vega, 881 F.3d at 1153 (declining to extend Bivens to Fifth Amendment claim alleging violation of the right to procedural due process). As such, relief under Bivens is not available when (1) the claim arises in a new context than those previously recognized by the Supreme Court, and (2) special factors, including alternative remedies, counsel judicial hesitation. See Vega, 881 F.3d at 1153-54 (quoting Ziglar, 137 S. Ct. at 1858) ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action."); see also Bush v. Lucas, 462 U.S. 367, 386-90, 96 S. Ct. 2113, 48 L. Ed. 2d 701 (1983) (finding that, even assuming rights have been violated and other remedies were not as effective, the existence of a comprehensive remedy scheme precludes Bivens relief). Recently, in Lanuza v. Love, the Ninth Circuit found a Bivens remedy

under the Fifth Amendment due process clause where a government attorney intentionally submitted a forged document in an immigration proceeding to completely bar an individual from pursuing relief to which he was entitled. Lanuza, 899 F.3d 1019, 1034 (9th Cir. 2018). The Ninth Circuit noted that if the court determines that the plaintiff is seeking a Bivens remedy in a new context (as was the case in Lanuza), the court must then determine whether "special factors counsel[] hesitation," i.e., "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. [T]o be a 'special factor a factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1023 (citing Zigler, 137 S. Ct. at 1860); see also Ziglar 137 S. Ct. at 1857-58.

Construing the Complaint liberally, it appears that plaintiff is attempting to allege that the Director Defendants and the FCI-I Defendants failed to protect plaintiff from dangerous environmental conditions at FCI-I when they designated him for placement at that facility, and then continued to house him there despite deterioration of his pre-existing visual condition. Construing this as a Bivens claim would appear to "expand" the Bivens rremedy into a new context. As such, the claim must be dismissed.

Even if Counts 1 and 2 were properly before this Court as an Eighth Amendment Bivens claims, to establish a claim under the Eighth Amendment for failure to protect an inmate from dangerous conditions requires that plaintiff show (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Thus, a prison official may be liable under the Eighth Amendment for denying humane conditions of confinement only if he or she knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 847; Castro v. Cty. of L.A., 797 F.3d 654, 665-66 (9th Cir. 2015) (holding that in order to state a failure-to-protect claim, an inmate is required to show that: "(1) he faced a substantial risk of serious harm, (2) the defendants were deliberately indifferent to that risk, and (3) the defendants' failure to act was a proximate cause of the harm that he suffered").

Here, plaintiff alleges that FCI-I sits on a site contaminated by various toxins that are present in the groundwater, aquifers, and supply wells, and that "[a]ccounts of lingering, d[e]bilitating medical problems abound among those who lived and worked at George Air [F]orce [B]ase [which was on the site prior to the prison being built], or were incarcerated at the prison complex," including "organ failures, such as vision loss . . . with knowledge that exposure to the harsh desert sunlight can cause cataracts, macular degeneration, ocular cancer, . . . and various medical problems." (Compl. at 6). Plaintiff states that, prior to his incarceration, he had been told by an ophthalmologist that he had vision issues in his left eye that "would require two surgeries," and in his right eye, "which could be cured with a single surgery." (Compl. at 7). Although plaintiff alleges that the Director Defendants "were fully aware of the toxic chemicals and danger to . . . inmates prior to deciding to build FCC Victorville" (id.), plaintiff has not alleged that the Director Defendants or the FCI-I Defendants knew of plaintiff's vision condition prior to or upon his incarceration at FCI-I and intentionally sent him there knowing that the environment might adversely affect plaintiff's vision. Furthermore, although plaintiff generally alleges that his vision conditions worsened because of the alleged toxic contamination at FCI-I and that the FCI-I Defendants and Medical Defendants were deliberately indifferent to the effects the alleged contamination was having on his vision, plaintiff's allegations are conclusory and speculative at best; indeed, the anecdotal "[a]ccounts of debilitating medical problems" among those who worked at the site when it was George Air Force Base, or among other inmates, does not suffice to demonstrate that (1) the alleged contamination is objectively sufficiently serious, and (2) that the Director Defendants and the FCI-I Defendants were subjectively indifferent to inmate safety. Thus, there is nothing to demonstrate that defendants' alleged failure to protect plaintiff "was a proximate cause of the harm that he suffered," and nothing to tie plaintiff's purported ocular deterioration to the alleged environmental conditions at FCI-I.

To the extent plaintiff is purporting to raise any federal civil rights claims against the United States, any such claims are barred. The doctrine of sovereign immunity bars claims against the United States *as well as federal actors sued in their official capacities*. See Gilbert v. DaGrossa, 756 F.2d 1455, 1458-59 (9th Cir. 1985) (holding that a suit against officers and employees of the United States in their official capacities is essentially a suit against the United States and is barred by sovereign immunity). Further, to the extent that plaintiff is intending to raise any claims against any prison official in his or her official capacity, such a claim against a federal prison official is a suit against the United States. See, e.g., Hutchinson v. United States, 677 F.2d 1322, 1327 (9th Cir. 1982). No suit may be brought against the United States unless the United States waives its sovereign immunity and consents to be sued. See Gilbert, 756 F.2d at 1458. The United States has **not** waived its sovereign immunity for actions brought pursuant to Bivens. See Kaiser v. Blue Cross, 347 F.3d 1107, 1117 (9th Cir. 2003) (noting that there has been no waiver of sovereign immunity under Bivens); Holloman v. Watt, 708 F.2d 1399, 1401-02 (9th Cir. 1983) (per curiam) (holding that a Bivens claim may be maintained only against federal employees in their individual rather than official capacities).

Here, plaintiff names the Grievance Defendants, the Acting Complex Warden, and the Medical Defendants, all of whom are federal employees, in their official as well as in their individual capacities. Plaintiff, however, **may not bring any federal civil rights claims against the United States, or against these federal employees in their official capacities**.

Accordingly, even assuming that Counts 1 and 2 are viable Bivens claims, the Court finds that the allegations in the Complaint are insufficient to state a federal civil rights claim for failure to protect under the Eighth Amendment against the Director Defendants and the FCI-I Defendants.


**Count 3**

In Count 3, plaintiff contends that the Medical Defendants were deliberately indifferent to his serious medical needs when they failed to properly treat his vision problems. To the extent, if any, that plaintiff alleges in Counts 1 and 2 that the Director Defendants and the FCI-I Defendants were deliberately indifferent to his medical needs, the analysis below applies to them as well.

In order to establish a claim under the Eighth Amendment for inadequate medical care, plaintiff must show that a specific defendant was deliberately indifferent to his serious medical needs. See Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed 2d 251 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference may be manifest by the intentional denial, delay or interference with a plaintiff's medical care, or by the manner in which the medical care was provided. See Gamble, 429 U.S. at 104-05; McGuckin, 974 F.2d at 1059. The defendant, however, must *purposefully* ignore or fail to respond to plaintiff's pain or medical needs. See McGuckin, 974 F.2d at 1060. Thus, an inadvertent failure to provide adequate medical care, mere negligence or medical malpractice, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute an Eighth Amendment violation. Gamble, 429 U.S. at 105-07; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, a determination of "deliberate indifference" must involve an examination of the seriousness of plaintiff's medical need. "[D]eliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" McGuckin, 974 F.2d at 1059 (citing Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the

'unnecessary and wanton infliction of pain.'" Id. (citing Gamble, 429 U.S. at 104). Indications of such a need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60.

Here, plaintiff alleges that prior to his incarceration he had been told by an ophthalmologist that he had vision issues in his left eye that "would require two surgeries," and in his right eye, "which could be cured with a single surgery." (Compl. at 7). The Court finds that plaintiff has alleged a serious medical condition. However, although plaintiff alleges that the Director Defendants "were fully aware of the toxic chemicals and danger to . . . inmates prior to deciding to build FCC Victorville" (id.), plaintiff has not alleged that the Director Defendants or the FCI-I Defendants knew of plaintiff's vision condition prior to or upon his incarceration at FCI-I and intentionally sent him there knowing that the environment might adversely affect plaintiff's vision. Furthermore, although plaintiff generally alleges that his ocular condition worsened because of the alleged toxic contamination at FCI-I and that the FCI-I Defendants and Medical Defendants were deliberately indifferent to the effects that the alleged contamination was having on his vision, plaintiff's allegations are conclusory and speculative at best; indeed, as discussed above, there is nothing to link plaintiff's purported visual deterioration to the alleged environmental conditions at FCI-I.

With respect to the Medical Defendants, plaintiff generally alleges that Dr. Villalon, the FCI-I physician who treated him for his eye issues, as well as the unnamed FCI-I Clinical Director, "mid-level medical practitioners" supervised by Dr. Villalon, the Clinical Director, and the FCI-I "Resource Utilization Committee," all were deliberately indifferent to his serious medical needs, in part because they intentionally and deliberately exposed plaintiff "to the toxic environment" and, in part, because he was only examined every "couple of months" and the examining physician did not agree with plaintiff's first ophthalmologist that surgery was a viable option. Such allegations -- which reflect at best an inadvertent failure to provide adequate medical care, mere negligence, or a difference of opinion over proper medical treatment -- are not sufficient to show deliberate indifference to plaintiff's serious medical needs. Moreover, plaintiff has failed to set forth any factual allegations that any specific defendant *purposefully* ignored or failed to respond to plaintiff's pain or medical needs. To the contrary, plaintiff appears to allege that he received prompt treatment as soon as he raised his vision complaints, even being sent to a physician outside the facility, and was then scheduled for regular examination "every couple of months." (Compl. at 8). Plaintiff suggests that examination "every couple of months, fails [to] provide proper care for a serious medical need" (id.), and contends that he "is seeking a cure, such as the surgeries recommended by the first eye specialist." (Id.). However, "[a] difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference." Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and internal quotation marks omitted); see also Cano v. Taylor, 739 F.3d 1214, 1217 (9th Cir. 2014) (prisoner's difference of opinion as to his medical treatment "is not actionable").

Accordingly, the Court finds that the allegations in the Complaint are insufficient to state a federal civil rights claim under the Eighth Amendment for deliberate indifference to medical needs against any defendant.

**Count 4**

In Count 4, plaintiff alleges that the Grievance Defendants use improper "tactics" when considering inmate grievances, which "directly infringe[] the inmate's right to petition [under the First Amendment], and deprives the inmate of Due Process guaranteed by the Fifth Amendment. Specifically, he contends that defendant Wong, "always require[s] technical forms of pleadings be used in inmate grievances," in violation of 28 C.F.R. § 40.7(a), and that if defendant Wong "cannot discern a technical reason to deny an inmate grievance, he will

forward the grievance to Defendant Elizer [sic] Ben-Shmuel." (Compl. at 11). He further submits that if defendant Ben-Shmuel "cannot find a reasonable sounding technical reason for denying an inmate's appeal to the Regional Counsel, he will simply sit upon the appeal and never answer [in violation of 28 C.F.R. § 40.7(d)], which directly infringes the inmate's right to petition, and deprives the inmate of Due Process guaranteed by the Fifth Amendment." (Id.). He states that these tactics have been used by the Grievance Defendants "in Plaintiff's case." (Id.).

A prisoner has no federal constitutional right to an effective grievance or appeal procedure and the mere participation of a prison official in plaintiff's administrative appeal process is an insufficient basis on which to state a federal civil rights claim against such defendant. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (an inmate has "no legitimate claim of entitlement to a grievance procedure"). To the extent that plaintiff may be intending to allege a federal due process claim arising from the failure to properly process an administrative grievance, the guarantee of procedural due process under the Fourteenth Amendment applies only when a constitutionally protected liberty or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); Shinault v. Hawks, 782 F.3d 1053, 1057 (9th Cir. 2015) ("Due process protections extend only to deprivations of protected interests."). An inmate administrative appeal system does not implicate a liberty interest protected by the Due Process Clause. See Mann, 855 F.2d at 640. Plaintiff's allegations concerning any alleged grievances he has filed with respect to his claims in the Complaint fail to give rise to a federal civil rights claim against the Grievance Defendants. Accordingly, the Complaint fails to state any claim against the Grievance Defendants.

Based on the above, the Court finds that the allegations in the Complaint are insufficient to state a federal civil rights claim under the First or Fifth Amendments against the Grievance Defendants.

**Conclusion**

Although it is not absolutely clear to the Court, the Court is doubtful that plaintiff will be able to cure the deficiencies in his Complaint against any of the defendants by amendment. Because plaintiff is proceeding *pro se* in this civil rights action, however, and because this ruling marks the first time the Court has addressed the sufficiency of plaintiff's claims against defendants, the Court will provide him with the opportunity to amend. See Noll, 809 F.2d at 1448 (holding that a *pro se* litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

**Based on the above, plaintiff's Complaint is dismissed with leave to amend. If plaintiff desires to pursue this action, he is ORDERED to file a First Amended Complaint no later than February 14, 2019, remedying the deficiencies discussed herein. Further, plaintiff is admonished that, if he fails to timely file a First Amended Complaint or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that the action be dismissed without further leave to amend and with prejudice.[1]**

---

[1] Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as *dispositive* of that claim. Accordingly, while this Court believes that you have failed to plead sufficient factual matter in your pleading, accepted as true, to state a claim to relief that is plausible on its face, you are not required to omit any claim or defendant in order to pursue this action. However, if you decide to pursue a claim in a First Amended Complaint that this Court has
(continued...)

The First Amended Complaint must bear the docket number assigned in this case; be labeled "**First** Amended Complaint"; and be complete in and of itself without reference to the original Complaint, or any other pleading, attachment or document. Further, if plaintiff chooses to proceed with this action, plaintiff must use the blank Central District civil rights complaint form accompanying this order, must sign and date the form, **must completely and accurately fill out the form**, and must use the space provided in the form to set forth all of the claims that he wishes to assert in a First Amended Complaint.

The Clerk is directed to provide plaintiff with a blank Central District civil rights complaint form.

In addition, if plaintiff no longer wishes to pursue this action, he may request a voluntary dismissal of the action pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. The clerk also is directed to attach a Notice of Dismissal form for plaintiff's convenience.

**IT IS SO ORDERED**.


cc:    Jose Rodriguez-Ramirez, pro se




Initials of Deputy Clerk _____ch_____

---

[1](...continued)
found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to your right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.